IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SEASTAR HOLDINGS, INC., *et al.*[1] | Case No. 18-10039 (___) |
| Debtors. | Joint Administration Requested |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A) AUTHORIZING THE MAINTENANCE OF BANK ACCOUNTS AND CONTINUED USE OF EXISTING BUSINESS FORMS AND CHECKS, (B) AUTHORIZING THE CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, (C) AUTHORIZING THE CONTINUED USE OF INTERCOMPANY TRANSACTIONS AND GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY TRANSACTIONS AND (D) GRANTING LIMITED RELIEF FROM THE REQUIREMENTS OF BANKRUPTCY CODE SECTION 345(B) AND THE UNITED STATES TRUSTEE OPERATING GUIDELINES**

The above-captioned debtors and debtors-in-possession (the "Debtors") by and through their proposed undersigned counsel, hereby submit this *Motion of the Debtors for Entry of an Order (A) Authorizing the Maintenance of Bank Accounts and Continued Use of Existing Business Forms and Checks, (B) Authorizing the Continued Use of Existing Cash Management System, (C) Authorizing the Continued Use of Intercompany Transactions and Granting Administrative Expense Status to Postpetition Intercompany Transactions and (D) Granting Limited Relief from the Requirements of Bankruptcy Code Section 345(b) and the United States Trustee Operating Guidelines* (the "Motion"). In support of the Motion, the Debtors rely on the *Declaration of Matthew Foster in Support of Chapter 11 Petitions and First Day Pleadings* (the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: SeaStar Holdings, Inc. (0418), Seaborne Virgin Islands, Inc. (5458), and Seaborne Puerto Rico, LLC (3572). The Debtors' corporate headquarters and the mailing address is World Plaza Building, 9th Floor, 268 Munoz Rivera Avenue, San Juan, Puerto Rico 00918.

{1182.001-W0049843.}

"First Day Declaration"),[2] filed contemporaneously with this Motion, and respectfully state as follows:

## JURISDICTION AND VENUE

1.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.[3]

2.  The statutory predicates for the relief sought herein are sections 105(a), 345, 363, 364 and 553 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended or modified, the "Bankruptcy Code"); rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2015-2(a) and (b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

3.  Venue is proper in this district pursuant to 28 U.S.C. § 1408.

## GENERAL BACKGROUND

4.  On the date hereof (the "Petition Date"), the Debtors commenced the above captioned cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Court.

---

[2] Except where otherwise indicated, capitalized terms used but not defined in this Motion have the meanings ascribed to them in the First Day Declaration.

[3] Pursuant to Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware 9013-1(f), the Debtors hereby confirm their consent to entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

5.  The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6.  As of the date of this Motion, no trustee, examiner or statutory committee has been appointed in these Chapter 11 Cases.

7.  Additional information regarding the circumstances leading to the commencement of these Chapter 11 Cases and information regarding the Debtors' business and capital structure is set forth in detail in the First Day Declaration filed contemporaneously with this Motion and incorporated herein by reference.

A.  **Background Related to the Cash Management System**

8.  Prior to the commencement of these Chapter 11 Cases, and in the ordinary course of their business, the Debtors maintained seven (7) bank accounts (the "Bank Accounts") to collect funds generated by operations and disburse those funds to satisfy obligations required to operate their business. A list of the Bank Accounts is attached hereto as "**Exhibit A**."

9.  The Bank Accounts are part of a carefully constructed cash management system (the "Cash Management System") that ensures the Debtors' ability to efficiently monitor and control their cash position. The Debtors' Cash Management System is maintained primarily by Seaborne Virgin Islands, Inc. through three (3) accounts at First Bank in Puerto Rico, one (1) account with Banco Popular in Puerto Rico, one (1) account with U.S. Bank in Minnesota, and one (1) account at St. Kitts – Nevis Anguilla National Bank in St. Kitts.[4] In addition, Seaborne Puerto Rico, LLC maintains one (1) account at Banco Popular in Puerto Rico.

---

[4] The Debtors do not actively use the St. Kitts – Nevis Anguilla National Bank account. During the prepetition period the Debtors made several efforts to close this account, however, the bank requires the original signatory for the account to also authorize its closure. Unfortunately, the executive employee who opened the account no longer is an employee of the Debtors. The Debtors have reached out to this former employee in the hopes that he can assist in closing this account.

10. As explained more fully in the First Day Declaration, the Debtors generate revenue through the sale of airline tickets. The Debtors' cash is generated through direct sales with customers or as a result of their code share and interline relationships with other airlines. The Debtors operate in territories of the United States with offices in San Juan, Puerto Rico and St. Croix in the U.S. Virgin Islands. As such, the Debtors require multiple Bank Accounts to handle their business transactions and operations.

11. The Debtors utilize the Bank Account at First Bank ending in 7807 as their main account for business transactions and operations (the "Operating Account"). All payments received directly from customers are deposited into the Operating Account. The Debtors pay certain obligations, including, among other things, rent, utilities, and other ordinary business expenses through the Operating Account. Payroll obligations for operational employees employed by Seaborne Virgin Islands, Inc. are funded by funds from the Operating Account.

12. The Debtors also use the Operating Account to transfer funds to the other savings and checking accounts at First Bank and to make automated clearing house or wire transfers to the Seaborne Puerto Rico, LLC operating account at Banco Popular ending in 1787 (the "SPR Operating Account"). For example, to fund payroll obligations for administrative employees employed by Seaborne Puerto Rico, LLC, the Debtors transfer funds from the Operating Account to the SPR Operating Account.

13. In addition, the Debtors generally transfer money into the Operating Account from the U.S. Bank account ending in 8020 (the "Clearinghouse Account") as a result of the Debtors' code share and interline relationships and relationships with travel agencies. In the ordinary course of business, the Debtors transfer funds from the Clearinghouse Account to the Operating Account as needed, typically within two (2) business days.

14.     To settle mutual payment obligations under the Debtors' code share and interline relationships, the Debtors are participants in two clearinghouses: the IATA Clearinghouse (the "ICH") and the Airlines Clearing House, Inc. (the "ACH").[5] Approximately every week the ACH and ICH aggregate billings from their participants to the Debtors, and from the Debtors to other participants, to calculate a net balance. For any given week, based upon the net balance of the billings, the Debtors may be required to make net payments to other clearinghouse participants, or the Debtors may be entitled to receive net payments. Settlement credits or debits from the ACH and ICH are based on the prior seven (7) days of activity under the code share and interline agreements. The Debtors also participate in the Airline Reporting Corporation clearinghouse that is specific to settling obligations owed to travel agencies (both traditional and online) that sell tickets for travel on the Debtors' airline.

15.     The Debtors perform a reconciliation of all of the deposits and debits in the Cash Management System, which were historically reviewed daily and reconciled monthly. Since the week leading up to the Petition Date, these amounts have been reviewed daily and reconciled weekly. The Debtors also make book entries at the time of each transfer between all accounts.

### B.     Existing Business Forms and Checks

16.     In the ordinary course of business, the Debtors use pre-numbered check stock with the Debtors' logo printed thereon. In addition, the Debtors maintain pre-printed correspondence and business forms, including, but not limited to, letterhead, envelopes, promotional materials, internal administrative forms and other business forms (collectively, along with the Debtors' checks, the "Business Forms"). To minimize administrative expense and delay, the Debtors request authority to continue to use their Business Forms substantially in

---

[5] As explained in the First Day Declaration, the Debtors' code share and interline agreements provide for reciprocal ticketing, baggage handling, marketing and other services to permit passengers to book one ticket to a Caribbean destination and to facilitate more convenient connections to passengers.

the forms existing immediately prior to the Petition Date, without reference to the Debtors' "Debtors-In-Possession" status.

C.  **The Debtors' Intercompany Transactions**

17.  While the Debtors maintain a centralized Cash Management System, they account for obligations that arise among each other via their business and legal relationships (the "Intercompany Transactions") through book entries on the Debtors' books and records.

18.  The Debtors maintain records of the Intercompany Transactions, including fund transfers, and thus can ascertain, trace and account for Intercompany Transactions. Similar to other credits and debits in the Cash Management System, the Debtors weekly reconcile all Intercompany Transactions. Consistent with their prepetition practice, the Debtors intend to continue maintaining records and appropriately reconcile all Intercompany Transactions postpetition in the ordinary course of business.

**RELIEF REQUESTED**

19.  By this Motion, the Debtors seek an order: (a) authorizing the maintenance of their Bank Accounts and continued use of existing Business Forms; (b) authorizing, but not directing, the continued use of their existing Cash Management System; (c) authorizing the continued use of Intercompany Transactions and granting administrative expense status to postpetition Intercompany Transactions, and (d) providing any additional relief required in order to effectuate the foregoing.

20.  The Debtors also request the right, in their discretion, to (i) pay any Bank Account related fees, and (ii) to close or otherwise modify the terms of certain of the Bank Accounts and open new debtors-in-possession accounts as may be necessary to facilitate these Chapter 11 Cases and operations, or as may otherwise be necessary to comply with the

requirements of any debtors-in-possession financing and/or cash collateral order entered in these Chapter 11 Cases.

## BASIS FOR RELIEF REQUESTED

### A. Cash Management System

21. The Debtors believe that the Bank Accounts and related Cash Management System mechanisms are well-suited to the Debtors' business needs and operations. To require the Debtors to close the Bank Accounts and reestablish new accounts would not result in greater administrative controls and would require considerable time and expense to the Debtors' estates. Moreover, permitting the Debtors to continue using their existing Bank Accounts is essential to a smooth and orderly transition of the Debtors into chapter 11 and to avoid disruption of their business and operations, including the disruption that could result if checks written but not negotiated or cashed prior to the Petition Date were dishonored.

22. Moreover, the continued use of a cash management system employed in the ordinary course of a debtor's prepetition business has been approved as a routine matter in a number of other cases in this district. *See, e.g., In re Jumio, Inc.*, Case No. 16-10682 (BLS) (Bankr. D. Del. Mar. 22, 2016); *In re Saladworks*, Case No. 15-10327 (LSS) (Bankr. D. Del. Feb. 18, 2015); *In re Brookstone Holdings Corp.*, Case No. 14-10752 (BLS) (Bankr. D. Del. Apr. 4, 2014); *In re Landauer Healthcare Holdings, Inc.*, Case No. 13-12098 (CSS) (Bankr. D. Del. Aug. 20, 2013); *In re Filene's Basement, LLC*, Case No. 11-13511 (KJC) (Bankr. D. Del. Nov. 4, 2011); *In re Indianapolis Downs, LLC, et al.*, Case No. 11-11046 (BLS) (Bankr. D. Del. April 15, 2011); *In re Int'l Aluminum Corp.*, Case No. 10-10003 (MFW) (Bankr. D. Del. Jan. 6, 2010). Courts have recognized that strict enforcement of the bank account closure requirements in certain cases does not serve the rehabilitative purposes of chapter 11. Accordingly, courts in

this district have waived such requirements and replaced them with alternative procedures that provide the same protections. *See, e.g., In re Exide Technologies*, Case No. 02-11125 (Bankr. D. Del. April 17, 2002) (permitting debtors to maintain existing bank accounts and cash management system); *In re W.R. Grace & Co.*, Case No 01-01139 (Bankr. D. Del. April 2, 2001) (same); *In re USG Corp.*, Case No. 01-02094 (Bankr. D. Del. June 27, 2001) (same); *In re Waccamaw's HomePlace*, Case No. 01-00181 (Bankr. D. Del. Jan. 17, 2001) (same).

23. Indeed, courts in this district have noted that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). The United States Court of Appeals for the Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (stating a cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

24. Further, Bankruptcy Code section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title" and Bankruptcy Code section 363(c)(1) authorizes the debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. §§ 105(a) and 363(c)(1). The purpose of these sections is to provide a debtor-in-possession with the flexibility to engage in the ordinary transactions required to operate its business without undue oversight by

creditors or the court. *See Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997).

25. The Debtors' Cash Management System constitutes a customary and essential business practice that was created and implemented by the management of the Debtors in the exercise of the Debtors' business judgment. Moreover, the Cash Management System is similar to those commonly employed by corporate enterprises comparable to the Debtors in size and complexity in operations.

26. Indeed, the Cash Management System is a practical mechanism that allows the Debtors to transfer their revenues to the payment of their obligations that decreases the burdens on the Debtors, and that provides several important benefits, including the ability to: (a) control and monitor corporate funds; (b) ensure cash availability; and (c) reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate balance and presentment information. Moreover, continued operation of the Cash Management System is crucial to the Debtors' ongoing business operations. All of the benefits discussed with respect to maintaining the Debtors' existing Cash Management System will assist the Debtors in their effort to maintain their operations pending the confirmation of a chapter 11 plan or other disposition of their assets, making the relief requested herein appropriate under Bankruptcy Code section 105(a).

**B.   The Debtors Should be Permitted to Maintain Bank Accounts**

27. For similar reasons, the Debtors should be authorized to continue to fund their business and operations by payments made from the Bank Accounts listed on **Exhibit A** to this Motion and should be exempt from certain of the Operating Guidelines for Chapter 11 Cases (the

"Guidelines")[6] established by the United States Trustee for the District of Delaware. One provision of the Guidelines requires a chapter 11 debtor-in-possession to open new bank accounts and close all existing accounts. This requirement, designed to provide a clear line of demarcation between prepetition and postpetition claims and payments, helps to protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date. The Guidelines also require that the new bank accounts only be opened in certain financial institutions designated as authorized depositories by the United States Trustee.

28. As part of the requested relief, the Debtors also seek a waiver of the requirement to establish specific bank accounts for any tax payments. The Debtors believe that tax obligations, if any, can be paid most efficiently out of the existing Bank Accounts, that the United States Trustee can adequately monitor the flow of funds into, among, and out of the Bank Accounts, and that the creation of new debtor-in-possession accounts designated solely for tax obligations would be unnecessary and inefficient.

29. The Debtors hereby request authority to maintain the Bank Accounts and utilize such accounts pursuant to the existing Cash Management System described above. The Debtors do not believe that allowing them to do so will prejudice any party-in-interest or their estates. If the relief requested herein is granted, the Debtors will not pay any debts incurred on their behalf before the Petition Date unless specifically authorized by this Court.

---

[6] The Guidelines were issued in order to assist the U.S. Trustee in supervising the administration of chapter 11 cases. Such Guidelines require chapter 11 debtors to, among other things, unless the Court requires otherwise:

    a. Close all existing bank accounts and open new accounts which must be designated debtor-in-possession bank accounts;

    b. Establish and maintain separate debtor-in-possession accounts for the payment of taxes and separate debtor-in-possession accounts for cash collateral; and

    c. Obtain and utilize new checks for all debtor-in-possession accounts which bear the designation "Debtor-in-Possession" and contain certain other information related to the chapter 11 case.

30. Moreover, if the Debtors were forced to close their Bank Accounts, the Debtors expect that there would be disruption and confusion that would negatively impact their operations. For instance, funds may be deposited into the wrong account, misapplied, held in limbo, or otherwise delayed, thus negatively affecting the Debtors' relationships with parties, who are necessary to the Debtors' efforts, and who already may be burdened by the filing of these Chapter 11 Cases. As a result, the Debtors submit that maintenance of their existing Bank Accounts and Cash Management System is warranted.

31. Subject to Bankruptcy Code section 553, all banks that maintain the Bank Accounts should be prohibited from offsetting, affecting, freezing, or otherwise impeding the Debtors' use of any funds deposited in the Bank Accounts on account of, or by reason of, any claim (as defined in Bankruptcy Code section 101(5)) of any such bank against the Debtor that arose before the Petition Date, absent further order of the Court.

C. **The Debtors Should be Permitted to Continue Using Existing Business Forms**

32. The Debtors request that this Court authorize them to use all correspondence and Business Forms existing immediately before the Petition Date without reference to the Debtors' status as "debtors-in-possession" as required by Local Rule 2015-2(a)[7] As of the Petition Date, the Debtors had a large stock of Business Forms that they used in the ordinary course of business. Reprinting their Business Forms to indicate that the Debtors are "Debtors-In-

---

[7] Local Rule 2015-2(a) provides:

> Where the debtor uses pre-printed checks, upon motion of the debtor, the Court may, without notice and hearing, permit the debtor to use its existing checks without the designation "Debtor-in-Possession" and use its existing bank accounts. However, once the debtor's existing checks have been used, the debtor shall, when reordering checks, require the designation "Debtor-in-Possession" and the corresponding bankruptcy number on all such checks.

Moreover, courts in this district have allowed debtors to use their existing prepetition forms without the "Debtor-In-Possession" label. *See In re Trans World Airlines, Inc.*, Case No. 01-0056 (PJW) (order dated January 10, 2001); *In re AmeriServe Food Distribution, Inc.*, Case No. 00-358 (PJW) (order dated February 2, 2000); *In re Zenith Electronics Corp.*, Case No. 99-2711 (MFW) (order dated August 23, 1999).

Possession" would impose an unnecessary burden and expense on the Debtors. There is little doubt that the parties with whom the Debtors do business shortly will become aware that they are chapter 11 debtors-in-possession. In any event, in accordance with the Guidelines and Local Rule 2015-2(a), the Debtors will add such "Debtors-In-Possession" designation to any Business Forms that they obtain or create postpetition.

D.  **The Debtors Should be Permitted to Continue Intercompany Transactions and Postpetition Intercompany Transactions Should be Granted <u>Administrative Expense Status</u>**

33. As described above, under the Cash Management System, the Debtors enter into certain Intercompany Transactions with each other in the ordinary course of their business. The Intercompany Transactions allow the Debtors, among other things, to meet the needs of key administrative functions. If these Intercompany Transactions are discontinued, the Debtors' cash management process would be disrupted causing irreparable harm to the Debtors. In particular, it is imperative that the Debtors maintain the ability, as debtors-in-possession, to make intercompany transfers to each other to ensure that they are able to operate smoothly and their ability to serve customers is in no way interrupted.

34. Accordingly, the Debtors believe that the continuation of Intercompany Transactions in the ordinary course of the Debtors' business is in the best interest of the Debtors' estates and their creditors. The Debtors seek authority to continue to enter into such Intercompany Transactions in the ordinary course of their business. The Debtors maintain records of substantially all Intercompany Transactions and can ascertain, trace and account for the Intercompany Transactions at all times. The Debtors will continue to maintain such records postpetition.

35. As a result of the Intercompany Transactions, at any given time, an individual Debtor can be rendered a net lender or net borrower. To ensure that each individual Debtor will not fund, at the expense of its creditors, the operations of another entity, the Debtors respectfully request that, pursuant to Bankruptcy Code sections 503(b)(1) and 364(b), all Intercompany Transactions be granted administrative priority expense status. Administrative expense treatment for intercompany claims has been granted in other multi-debtor chapter 11 cases in this District. *See, e.g., In re Brookstone Holdings Corp.*, 14-10752 (BLS) (Bankr. D. Del. Apr. 4, 2014); *In re Landauer Healthcare Holdings, Inc.*, 13-12098 (CSS) (Bankr. D. Del. Aug. 16, 2013); *In re Chem Rx Corporation*, 10-11567 (MFW) (Bankr. D. Del. May 13, 2010); *In re Stant Parent Corp.*, 09-12647 (BLS) (Bankr. D. Del. July 29, 2009); *In re Smurfit-Stone Container Corp.*, Case No. 09-10235 (BLS) (Bankr. D. Del. Feb. 23, 2009); *In re Merisant Worldwide, Inc.*, Case No. 09-10059 (PJW) (Bankr. D. Del. Jan. 13, 2009); In re Tribune Co., 08-13141 (KJC) (Bankr. D. Del. Dec. 10, 2008); *In re Tropicana Entm't LLC*, Case No. 08-10856 ((KJC) (Bankr. D. Del. May 6, 2008); *In re Pope & Talbot, Inc.*, Case No. 07-11738 (CSS) (Bankr. D. Del. Nov. 21, 2007).

36. The Debtors request this authority, subject to the rights, if any, of parties in interest in these Chapter 11 Cases to challenge the validity of such Intercompany Transactions, provided that each Debtor shall forbear from exercising, and shall not be entitled to exercise, any remedy relating to any Intercompany Transaction including, without limitation, seeking relief from the automatic stay, or seeking any sale, foreclosure, realization upon, repossession or liquidation of any property of another Debtor, or taking any position with respect to any disposition of the property, business operations, or the reorganization of another Debtor, absent further order of this Court. In an abundance of caution, the Debtors request that this Court

clarify that this relief will not limit the Debtors' ability to reconcile amounts owed between and among any Debtor and any affiliate, including netting and setting off obligations arising from Intercompany Transactions, whether arising pre or postpetition, in the ordinary course of business, between a particular Debtor and any other Debtor

### E. Waiver of the Requirements of Bankruptcy Code Section 345(b) Is Appropriate

37. The Debtors request that the Court waive the requirements of Bankruptcy Code section 345(b) on an interim basis and permit the Debtors to maintain their deposits in the Bank Accounts in accordance with existing deposit practices until such time as they obtain this Court's approval to deviate from the guidelines imposed under Bankruptcy Code section 345(b) on a final basis. The Debtors' existing deposit practices are significantly less burdensome and more appropriately tailored to their business needs than the practices otherwise required under the Bankruptcy Code and by the Guidelines. Accordingly, the Debtors submit that strict compliance with Bankruptcy Code section 345 and the Guidelines would be overly burdensome and restrict the Debtors' banking options to the detriment of their estates and creditors.

38. Bankruptcy Code section 345 governs a debtor's deposits during its bankruptcy case and authorizes deposits of money of an estate in such manner as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). However, for deposits or investments that are not "insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States," Bankruptcy Code section 345(b) requires the estate to obtain from the entity with which such money is deposited or invested, a bond in favor of the United States secured by the undertaking of an adequate

corporate surety. In the alternative, the estate may require that the entity deposit government securities in accordance with 31 U.S.C. § 9303.

39. Maintaining deposits in strict compliance with the requirements of Bankruptcy Code section 345(b) would, in some cases, be inconsistent with the requirement of section 345(a) that deposits be maintained in a manner that "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). It is for this reason that in 1994, Congress amended Bankruptcy Code section 345 to allow the requirements of subsection (b) to be waived or modified if a court so orders "for cause." 11 U.S.C. § 345(b). As the legislative history indicates, Congress believed that strict application of Bankruptcy Code section 345(b) could "needlessly handcuff larger, more sophisticated debtors." 140 Cong. Rec. H 10,767 (October 4, 1994). All of the Debtors' Bank Accounts are ordinary depository accounts maintained for operational and not investment purposes. At times, the individual balance in the Bank Accounts may exceed the current limits of governmental insurance. Therefore, these accounts may be subject to the bonding or collateralization requirements of Bankruptcy Code section 345(b) and the Guidelines unless those requirements are waived.

40. In determining whether "cause" exists for a waiver, the Court should consider the "totality of circumstances," including the following factors:

    (a)    The sophistication of the debtor's business;

    (b)    The size of the debtor's business operations;

    (c)    The amount of the investments involved;

    (d)    The bank ratings (Moody's and Standard and Poor's) of the financial institutions where debtor-in-possession funds are held;

  (e)  The complexity of the case;

  (f)  The safeguards in place within the debtor's own business of insuring the safety of the funds;

  (g)  The debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

  (h)  The benefit to the debtor;

  (i)  The harm, if any, to the estate; and

  (j)  The reasonableness of the debtor's request for relief from [Bankruptcy Code section] 345(b) requirements in light of the overall circumstances of the case.

*In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

  41. For the reasons set forth herein and in the First Day Declaration, the Debtors believe it would be in the best interests of their estates' creditors to continue following the existing deposit practices, notwithstanding the requirements of Bankruptcy Code section 345(b) and the Guidelines. The Debtors further submit that the Debtors' deposit practices are commercially reasonable and appropriate, and consistent with the intent of Bankruptcy Code section 345.

  42. This Court has consistently waived the strict requirements of Bankruptcy Code section 345(b) and the Guidelines on an interim basis. *See, e.g., In re Jumio, Inc.*, Case No. 16-10682 (BLS) (Bankr. D. Del. Mar. 22, 2016); *In re Brookstone Holdings Corp.*, Case No. 14-10752 (BLS) (Bankr. D. Del. Apr. 4, 2014); *In re Landauer Healthcare Holdings, Inc.*, Case No. 13-12098 (CSS) (Bankr. D. Del. Aug. 20, 2013); *In re Nexity Fin. Corp.*, Case No. 10-12293 (KJC) (Bankr. D. Del. July 23, 2010). The Debtors submit that cause for a similar waiver exists in these Chapter 11 Cases.

## BANKRUPTCY RULE 6003 SATISFIED
## AND REQUEST FOR WAIVER OF STAY

43. The Debtors further submit that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein and in the First Day Declaration, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

44. Specifically, Bankruptcy Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001.

45. The Third Circuit Court of Appeals has interpreted language similar to that used in Bankruptcy Rule 6003 in the context of preliminary injunctions. In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed. Appx. 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g., Acierno v. New Castle County*, 40 F.3d 645, 653-55 (3d Cir. 1994).

46. The Debtors further seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Rule 6004(h) of the Bankruptcy Rules, "[an] order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." As set forth above, the relief requested herein is essential to prevent irreparable damage to the Debtors' operations, going-concern value, and their efforts to pursue a sale of their assets.

47.     Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rules 6003 and 6004(h).

## NOTICE AND NO PRIOR REQUEST

48.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) each of the Debtors' creditors holding the twenty (20) largest unsecured claims as set forth in the consolidated list filed with the Debtors' petitions; (c) Volant SVI Funding, LLC and its counsel; (d) the United States Department of Justice; (e) all parties who have requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002; and (f) each of the banks holding the Bank Accounts set forth in **Exhibit A** hereto.

49.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an order granting the relief requested herein and grant the Debtors such other and further relief as is just and proper.

Dated: January 8, 2018
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ Kerri Mumford

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
Travis J. Ferguson (No. 6029)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
         mumford@lrclaw.com
         ferguson@lrclaw.com

*Proposed Counsel to the Debtors
and Debtors-in-Possession*